IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No. 4:23-cr-00084-SMR-HCA |
| | ) Case No. 4:23-mj-00311-SMR-HCA |
| Plaintiff, | ) |
| | ) ORDER ON GOVERNMENT'S APPEAL |
| v. | ) OF DETENTION ORDER |
| | ) |
| RYAN CHRISTOPHER KELLY, | ) |
| | ) |
| Defendant. | ) |

A grand jury indicted Defendant Ryan Christopher Kelly with one count of Interstate Transmission of a Threat, a violation of 18 U.S.C. § 875(c). [ECF No. 1]. Specifically, the indictment alleges Defendant placed two threatening phone calls to the Governor of Iowa on April 18, 2023. *Id.* Defendant was arrested on April 24, 2023. He had a detention hearing before United States Magistrate Judge Mary Alice Theiler of the United States District Court for the Western District of Washington on April 28, 2023. [ECF No. 12]. The Government moved for detention on the ground that Defendant is a flight risk and a threat to the community. [ECF No. 12-3 at 3 (Transcript of Detention Hearing)]. Judge Theiler denied the Motion to Detain, instead releasing the Defendant with restrictions. *Id.* at 22–23. The Government appealed, asking the Court to detain Defendant pending trial. [ECF No. 7].

I. BACKGROUND

On April 18, 2023, a staff member of the Governor of Iowa received two voice messages, which were recorded. The staff noticed that the messages were left by a phone number with an area code originating from the western part of the State of Washington.

The first message is one minute and forty-two seconds. In it, the voice states, "Governor Kim Reynolds, I can see that you passed the child labor law early on the morning of Tuesday."

[ECF No. 12-1 (Gov. Ex. 1)].  The speaker continues with "I can tell you that people from other states and like-mindedness are going to be coming to your area to assassinate you . . . you create an action and the world responds.  This is a choice you have made."  It then threatens that "if the decision is not made to overturn the child labor laws . . . our team will be forced to let the others know. . . You have been warned, Kim Reynolds, your death is imminent if you do not change back those child labor laws."  *Id.*

The second message was received minutes later.  In the message, a voice with a different accent says, "Kim Reynolds put that law through at 4:45 or what I saw on the news this morning.  This is only because you have made a decision.  Ms. Reynolds, Kim, your first name, we're going to kill you over the decision you made."  [ECF No. 12-2 (Gov. Ex. 2)].  The message continues, "We're going to kill you . . . Okay? . . . Kim Reynolds is going to be dead at the end of the month . . . The actions you are making warrant your own death.  We're going to come there and we're gonna rip you apart limb from limb."  *Id.*  The caller concludes by stating, "take away them laws you just put in or we gonna kill you."  *Id.*  It ends with "this is a warning from your citizens directly next to you . . . I'll tell you right now, you're sitting next to three of them . . . Have a good day . . . because it might be your last."  *Id.*

The Federal Bureau of Investigation ("FBI") was notified of these messages and investigated them.  Through its investigation, the agency determined the calls were placed in the vicinity of a specific residence.  A search warrant was executed on April 24, 2023 at a residence in Concrete, Washington.  [ECF No. 12-2 at 5].  Defendant was located on the premises and completed an interview with the FBI.  *Id.*  In the interview, Defendant confirmed that the phone number belonged to him and he placed the calls to the Governor with the goal of changing her mind on the issue.  *Id.*

## II.   GOVERNING LAW

### A.   *Standard of Review*

The Government may seek the revocation or review of a pre-trial release order issued by an out-of-district judge in the district court with original jurisdiction over the charges. 18 U.S.C. § 3145(a). Review of the magistrate judge's order is *de novo*. *United States v. Maull*, 773 F.2d 1479, 1481 (8th Cir. 1985) (*en banc*). The magistrate judge's findings of fact are reviewed under a "clearly erroneous" standard. *United States v. Sazenski*, 806 F.2d 846, 847 (8th Cir. 1986).

### B.   *Statutory Framework*

The Bail Reform Act ("BRA") was passed in "response to numerous perceived deficiencies in the federal bail process." *United States v. Salerno*, 481 U.S. 739, 742 (1987). Under the BRA, there are four outcomes for a defendant in the bail process. *United States v. Villatoro-Ventura*, 330 F. Supp. 3d 1118, 1123 (N.D. Iowa 2018) (citing 18 U.S.C. § 3142). The detention provision states a judicial officer "shall order the detention of [a] person before trial" if they find "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). The BRA identifies procedures that must occur before detaining a defendant pending trial. 18 U.S.C. § 3142(e)(2–3) (providing a hearing is governed by certain rebuttable presumptions on what conditions may reasonably assure the appearance of the defendant).

When the Government moves for detention prior to trial, it "triggers a two-step inquiry." *United States v. Delgado*, 985 F. Supp. 2d 895, 897 (N.D. Iowa 2013) (citing *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988)). At the first step, the Government must establish it has authority to request detention under 18 U.S.C. § 3142(f)(1–2) by a preponderance of the evidence. *Villatoro-Ventura*, 330 F. Supp. 3d at 1124 (citing *United States v. Orta*, 760 F.2d 887, 891 n.20

(8th Cir. 1985) (*en banc*)). When the Government makes a sufficient showing on the first element, a court asks if any condition or combination of conditions would reasonably assure the appearance of the person and the safety of the community. *United States v. Kisling*, 334 F.3d 734, 735 (8th Cir. 2003) (citing *Orta*, 760 F.3d at 891); *Sazenski*, 806 F.2d at 848 ("either danger to the community or risk of flight is sufficient to authorize detention."). Courts consider four factors at this stage: (1) "the nature and circumstances of the offense charged," (2) "the weight of the evidence against the person," (3) "the history and characteristics of the person," and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

### III. ANALYSIS

The Government contends Defendant should be detained based on flight risk and the threat he poses to the community. [ECF No. 12 at 7–8]. Defendant responds that the Government lacks authority to request detention because the alleged offense and relevant circumstances are outside of the scope of the permissible grounds for detention enumerated in 18 U.S.C. § 3142(f). [ECF No. 16 at 4]. Alternatively, Defendant maintains there are conditions that will reasonably assure his appearance and the safety of the community. *Id.* at 16–17. The Government has shown both steps are met and detention is appropriate.

#### A. Authority to Request Detention

A court can detain an individual before trial if they are charged with an enumerated offense or if the government establishes that there is a serious right of flight by a defendant or a serious risk the defendant will interfere with a judicial process. 18 U.S.C. § 3142(f). Specifically, a defendant may be detained pretrial when the case involves "a serious risk that such a person will flee." 18 U.S.C. § 3142(f)(1)(A). Relevant to the inquiry are Defendant's history of moves,

whether he owns property, stable housing, and fiscal interests. *United States v. Mehmood*, 358 Fed. App'x. 767, 769 (8th Cir. Jan. 4, 2010). The Government can detain Defendant under the serious risk of flight provision. 18 U.S.C. § 3142(f)(2)(A).

Defendant is a serious risk of flight for several reasons. First, Defendant has a history of making rash decisions in response to stressors. [ECF No. 12-3 at 17 (Theiler discussion of pattern of behavior)]. In 2020, Defendant placed a call to "beat up an employee of a Montessori school" after he believed his girlfriend was improperly fired due to the COVID outbreak. [ECF No. 12-3 at 6]. In 2021, he made "a threat to burn down a Target" because he unsuccessfully applied for a job at the store. *Id.* In 2022, the FBI received a tip of a threat made to M1 Finance – a company based in Illinois – by Defendant. *Id.* at 7. In 2023, Defendant allegedly placed two threatening phone calls to the Governor of Iowa. *Id.* This conduct, which occurred in response to external stimuli, supports a finding of a serious risk of flight. *United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003) (noting that the factors for risk of flight include the individual's "past conduct").

Second, Defendant has a history of moving residences between states. [ECF No. 13 at 2]. From 2009 until 2019, Defendant lived in Alabama, Arizona, Florida, North Carolina, and New York. *Id.* During this same time, Defendant was charged with obstructing justice by providing false information to law enforcement, failing to appear, and obstructing government administration.[1] *Id.* at 3. When this information is considered together, there is at least one instance of Defendant being charged with failure to appear in North Carolina, not responding or turning himself in, and then coincidentally appearing in New York a few months later only after he was arrested and charged with obstruction. *Id.*

---

[1] The outcome of the 2013 offenses, *i.e.*, providing false information to law enforcement in Alabama, is unknown. [ECF No. 12 at 3]. The outcome of the failure to appear charge in North Carolina is unknown. *Id.* at 4. Defendant was convicted of the 2016 obstruction offense. *Id.*

Third, Defendant has no consistent record of employment and has not for a decade. [ECF No. 13 at 2]. According to pretrial reports, Defendant has a cyclical employment pattern in that he will obtain a new job, work for a few weeks, and then be let go. *Id.* This pattern has repeated over the past decade, which led him to acquire Social Security Disability Benefits. *Id.* The Court need not speculate on the underlying cause to conclude that a lengthy period of time without a job suggests a risk of flight.

Fourth, there is evidence to suggest that Defendant's current housing situation is unstable. In the initial pretrial report, Defendant reported that he lives in a shared house with his girlfriend and their friend. [ECF No. 13 at 2]. He explained they are $600 behind in utility payments. *Id.* In the amended pretrial report, Defendant's girlfriend revealed the owner of the residence lost his job two months ago. [ECF No. 15 at 2]. This led them to fall even further behind on basic expenses. *Id.* Given this, it is reasonable for the Court to conclude Defendant's housing situation will deteriorate during the pendency of the case.

Fifth, the pretrial services reports reveal two instances of inconsistencies in the information given by the Defendant. [ECF Nos. 13; 15]. For example, the Defendant told pretrial services there were no firearms in the home during the initial interview on April 24, 2023. [ECF No. 12-3 at 8]. When pretrial services spoke with the owner of the home, he stated there is a firearm in the home and it is broken into parts. [ECF No. 15 at 2]. In the other instance, Defendant informed pretrial services that his girlfriend "is completely disabled and unable to care for herself . . . so they have her unspecified disability income, and he has to stay home to take care of her." [ECF No. 13 at 2]. During an interview with pretrial services, Defendant's girlfriend explained, "she is looking for work and had applied for disability benefits but was denied." [ECF No. 15 at 2]. She stated the three of them rely "primarily on the defendant's social security income." *Id.* These

statements leave the Court with serious concern about the veracity of information provided to pretrial services.

The facts reveal Defendant is an impulsive individual with a strong tendency to blow up at people or situations.  He has a transient lifestyle. He has been dishonest in proceedings, evaded them, or obstructed them.  He has provided information to pretrial services that is demonstrably untrue.  His employment and home life are unstable.  The Government has met its initial burden under 18 U.S.C. § 3142(f)(2)(A).[2]

*B. Potential Conditions of Release*

The Government maintains no set of conditions of release would ensure Defendant's non-flight and the safety of the community.  [ECF No. 12 at 7–9].  Defendant asserts that the conditions imposed by Judge Theiler, especially on mental health treatment, would mitigate any concerns on flight and community safety.  [ECF No. 16 at 18–19].  For the reasons below, the Court finds that no conditions of release would ensure Defendant's appearance and safety of the community.

A defendant may be detained based either on "danger to the community or risk of flight." *Sazenski*, 806 F.2d at 848.  This can occur "[o]nly if the government shows by clear and convincing

---

[2] Defendant may also be detained under 18 U.S.C. § 3142(f)(1)(A).  An individual may be detained pretrial when the matter is related to a "crime of violence." 18 U.S.C. § 3142(f)(1)(A). Conduct is a "crime of violence" under the BRA in one of three situations: (A) "an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person of property of another;" (B) "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense," or (C) "any felony under chapter 77, 109A, 110, or 117."  18 U.S.C. § 3156(a)(4)(A).  Every court to consider the question of whether a violation of 18 U.S.C. § 875(c) is a crime of violence under 18 U.S.C. § 3142(f)(1)(A) has answered in the affirmative.  *United States v. Santoro*, 359 F. Supp. 3d 122, 127 (D. Me. 2019); *United States v. Choudhry*, 941 F. Supp. 2d 347, 351 (E.D. N.Y. 2013); *United States v. Christy*, NO. 3:18-CR-223, 2020 WL 2794617, at *3 n.5 (M.D. Pa. May 29, 2020); *United States v. Jackson*, Criminal No. 20-118, 2022 WL 716968, at *2 n.4 (W.D. Pa. Mar. 10, 2022); *United States v. Kane*, Case No. 3:20-mj-5054 TLF, 2020 WL 1660058, *2 (W.D. Wash. Apr. 3, 2020); *United States v. Cooper*, Case No. 3:19-mj-04254-1, 2019 WL 4259454, at *3 (M.D. Tenn. Sept. 9, 2019).

evidence that no release condition or set of conditions will reasonably assure the safety of the community and by a preponderance of the evidence that no condition or set of conditions . . . will reasonably assure the defendant's appearance." *Kisling*, 334 F.3d at 735 (quoting *Orta*, 760 F.2d at 891). When addressing potential conditions, a court must consider four factors: "(1) the nature and circumstances of the crime; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant . . .; and (4) the seriousness of the danger to the community or to an individual." *Abad*, 350 F.3d at 797 (citing 18 U.S.C. § 3142(g)).

Each factor favors detention. The first factor weighs in favor because Defendant is accused of making serious, specific threats to assassinate the Governor of Iowa due to personal displeasure about official conduct. *Capriotti*, 2021 WL 229660, at *4 (holding the first factor weighs in favor of detention because of "explicit threats to inflict injury and even death on several members of the U.S. Congress."). The second factor strongly supports detention because Defendant admitted the phone number was his and he placed the calls during an interview with the FBI. [ECF Nos. 12 at 4; 12-3 at 5, 8]. The third factor, which suggests Defendant has a transient life where he obstructs official proceedings or does not appear, reinforces the appropriateness of detention. *Abad,* 350 F.3d at 797 (noting that a court may consider "past conduct"). The last factor bolsters the necessity of detention because Defendant has made at least five threats over the past three years, which makes him a danger to anyone who could or would earn his ire. *Brown*, 2016 WL 9227481, at *2.

Based on the aforementioned, the Government has met its burden. It has established by clear and convincing evidence no condition or combination of conditions of release will reasonably assure community safety. It has demonstrated that no condition or combination of conditions will ensure Defendant's appearance by a preponderance of the evidence.

IV.    CONCLUSION

The Government's Appeal of the Magistrate's Order on the Motion for Detention, [ECF No. 7], is GRANTED. The Detention Order of the United States Magistrate Judge is VACATED. Defendant shall remain in the custody of the United States Marshals Service pending trial.

IT IS SO ORDERED.

Dated this 22nd day of May, 2023.

_____
STEPHANIE M. ROSE, CHIEF JUDGE
UNITED STATES DISTRICT COURT